(17 Misc. Rep. 433.)

### BRONX GAS & ELECTRIC CO. v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County. June, 1896.)

1. MUNICIPAL CORPORATIONS—ANNEXATION—LIABILITY FOR DEBTS.

The mere annexation of a town to a city renders the city liable on the obligations of the town.

2. SAME—APPORTIONMENT OF LIABILITY.

Laws 1895, c. 934 (annexing certain towns to New York City) § 1, declares that the city shall be liable for the obligations of the annexed territory, "except as may be modified by the provisions herein contained." Section 3 provides that "such proportion of the debts and liabilities of each of said towns * * * as should proportionately and equitably be paid by the inhabitants of the territory by this act annexed" should be paid by New York City to each of said towns. *Held*, that section 3 does not apply where towns are wholly annexed, but in such cases New York City is liable for all the debts of the annexed towns.

3. TOWN BOARD—VALIDITY OF ACTS—RECITALS OF RECORD.

Where a town board at the same meeting transacted business as the town board and also as town auditors, a recital in the record book that they met as town auditors will not invalidate acts done in the capacity of town board.

4. SAME—LIGHTING HIGHWAYS—LOCATING LIGHTS.

A resolution by a town board that lights shall be placed at points on highways "not more than 375 feet, and not less than 300 feet, apart," is a compliance with a contract for lighting the highways of the town requiring "the location of lights" to be determined by the town board.

5. SAME—VALIDITY OF CONTRACT.

A contract for lighting streets, entered into by a town under a law permitting it to make contracts, before levying assessments, for town purposes (Laws 1893, c. 79, § 4), is not affected by restrictions on a city with which the town is afterwards annexed, forbidding it to incur expenses without previous appropriations.

6. SAME—WAIVER OF RESTRICTIONS.

A provision of a contract for lighting the highways of a town, providing that the town should not demand or receive lights beyond a stated number, may be waived by mutual agreement.

7. SAME—COMPLIANCE WITH ENABLING ACT.

Where a statute authorized the making of a contract for town lighting, and provided that the town board might establish districts, and assess property therein to pay for their respective lights, the validity of a contract for lighting the town does not depend on the establishment of such districts, but the expense for lighting an undistricted portion becomes a town charge.

Action by the Bronx Gas & Electric Company against the mayor, etc., of the city of New York on a contract made by plaintiff with the town of Westchester to light certain streets therein prior to the consolidation of said town with defendant city. Judgment for plaintiff.

Cannon & Atwater, for plaintiff.

F. M. Scott, for defendant.

DALY, J. The principal question in this case concerns the liability of the mayor, aldermen, and commonalty of the city of New York for the contract debts of the town of Westchester, which was annexed to and made a part of the city on June 6, 1895, by virtue of the act of that date. Laws 1895, c. 934. This action is brought

to recover $28,552.87 for lighting certain streets, avenues, and roads of said town for the eight months between May 1 and December 31, 1895, under a contract between the town authorities and one Bliven, made March 27, 1893, which, by successive assignments, became the property of the plaintiff.  Under that contract the town was to pay $125 per annum for each electric arc light, and the location of the lights was to be determined from time to time by the town board.  It is claimed by plaintiff that the town board authorized the location of 497 lights by resolutions passed at various dates between September 11, 1893, and June 4, 1895.  The action is resisted, first, upon the general ground that no action will lie against the mayor, aldermen, and commonalty of the city of New York in favor of parties who have made contracts with the local authorities of the annexed territory; but, if such action may be maintained, that no sum in excess of $28,000, being $125 for 224 lights, is collectible by plaintiffs under their contract for the whole of the year 1895, and that that amount has already been received by plaintiffs.  This last defense is founded (1) upon alleged restrictions upon the power of the local authorities to expend more than that sum for such purpose, and (2) upon alleged informalities in the attempt to exercise such power as they possessed.  In the absence of express statutory provision for the payment of the debts and performance of the contracts of the towns or villages annexed to the city of New York, the mere fact of annexation would fix liability upon the defendant, the absorbing corporation.  The city succeeds to all the property of said towns and villages, and becomes liable for all the debts previously contracted by them.  15 Am. & Eng. Enc. Law, 1016, and cases cited; 1 Dill. Mun. Corp. 186; Brewis v. City of Duluth, 13 Fed. 334.  See, also, Mobile v. Watson, 116 U. S. 289, 6 Sup. Ct. 398; Cash v. Town of Douglasville, 94 Ga. 557, 20 S. E. 438; Plunkett's Creek Tp. v. Crawford, 27 Pa. St. 107.  "Where one corporation goes entirely out of existence, by being annexed to or merged in another corporation, if no arrangements are made respecting the property and liabilities of the corporation that ceases to exist, the subsisting corporation will be entitled to all the property, and be answerable for all the liabilities." Thompson v. Abbott, 61 Mo. 176.  But express provision is made by the annexation act of 1895 for the assumption by the city of New York of the debts and liabilities of the annexed territory.  The first section of the act makes such territory part of the city and county of New York, and of the Twenty-Fourth ward thereof, subject to the same laws and obligations and liabilities, except as might be modified by the provisions of this act, as if such territory had been included within the said Twenty-Fourth ward by the provisions of the act of 1873 (chapter 613, amended by Laws 1874, c. 329), by which the towns of Morrisania, West Farms, and Kingsbridge were annexed to the city. By that act the city of New York was made liable for, and subject to, and required to make provision for, all debts, obligations, and liabilities of said towns maturing after the date of annexation, and, as to causes of action which accrued prior to that time, the act provided that they should survive, and be prosecuted to final judg-

ment against the city. It is claimed, however, that this general provision is modified ·by a subsequent part of the act of 1895, declaring that:

"Such proportion of the debts and liabilities of each of said towns and villages, and of the debts and obligations of the county of Westchester, existing when this act shall take effect, as should proportionately and equitably be paid by the inhabitants and property of the territory by this act annexed * * * shall be paid by the city and county of New York to each of the said towns and villages respectively, and to said county of Westchester." Chapter 934, § 3.

The phrase "proportion of the debts and obligations" indicaꞇes that the provision was not intended to apply to the debts or obligations of towns which had been wholly absorbed by the act of annexation. The act provided for the annexation of parts of certain towns and villages, but in the case of the town of Westchester, whose contract is under consideration, the whole territory of said town was annexed. In view of this fact, the sense of the provision last quoted becomes apparent. As portions of certain towns were taken, a proportionate part only of their debts and obligations should be shared or divided between the remaining territory and the city of New York. Where a part of a town only is annexed, and said part contains a disproportionately large or small share of town property, justice would require that an equitable distribution of the burdens should be made. No such adjustment is needed where the whole property of the town or village is absorbed. The city acquires all the private property for the purpose of taxation, and all the public property and rights as its own. It takes all the resources of the town, and with it all its burdens in the form of existing debts and obligations; and this results from the necessity of the case, in the absence of express statutory enactment. I deem, therefore, that the general provisions of the first section of the act are not modified by any other portion of the act, and that by express enactment, as well as upon settled principles and authority, the corporation of the city of New York stands in place of the town absorbed by it, and is primarily liable upon the latter's contract.

Objection to the validity of this claim is based upon the alleged informal and ineffectual attempt by the local authorities to exercise their powers in respect to lighting the territory in question. The power was conferred upon towns generally by the act of 1893 (chapter 79), and provided for a petition by taxpayers and advertisement, after which the town boards were authorized, in their discretion, to make contracts for a period not exceeding 10 years. The contract was made in proper form by the town authorities, and provided that "the location of the lights under this contract shall be determined from time to time by the town board." The town board met on some occasions as a board of town auditors, and, while it seems to have performed at its meetings, indiscriminately, the duties of town board as well as of town auditors, the minutes of such meetings more frequently describe it as convened under the latter name. It is objected that the location of lights by the board of town auditors is not a location under the contract by the town board; but

the evidence disposes of this objection by showing that the members of the town board met, in the meetings in question, and transacted the business of the town board as well as of the board of town auditors, and the objection seems to be of a highly technical nature, and not to be favored in the absence of substantial reasons.   The official acts of the town board are not to be invalidated by any general descriptive entry in the record book, which, from the testimony of their clerk, appears to have been merely his conclusions as to the capacity in which they met.   There is nothing to prevent their transacting business in both capacities at the same meeting.

It is further objected that the location of certain of the lights was indefinite, but this can hardly be urged against the location of June 4, 1895.   That was the last exercise of the power of the board, and is criticised chiefly because it occurred on the eve of annexation, and the effect of it was to involve the city in what is claimed to be an unnecessarily large outlay for the lighting of that part of its territory.   Up to the time of that resolution the company was maintaining 276 lights.   By the 31st of December, 1895, it had increased this number to 497 lights.   The resolution of the board was as follows:

"Whereas, pursuant to the contract between the town of Westchester and the Bronx Gas & Electric Company, said company is now engaged in building its gas plant in addition to its electric plant; and  whereas, it now appears proper and expedient to this board and to the municipal authorities of the town of Westchester, pursuant to the terms of said contract, to locate further and additional street lights: Now, therefore, be it resolved, that gas lamps be, and they are hereby, located on such of the streets, highways, roads, and avenues in said town as said company may from time to time, and during the term of said contract, lay its mains: provided, however, that said gas lamps shall not be more than 100 feet apart, nor less than seventy feet apart, except that in no case shall any such lamps be located, erected, and maintained upon any public street where electric arc lights are maintained by said company under said contract. And it is further resolved that said company be, and they are hereby, requested, notified, and required to continue with the erection and maintenance of electric arc lights upon the roads, highways, and avenues of said town, pursuant to the resolutions heretofore adopted by this board, which resolutions are hereby in all respects ratified and approved and continued in full force and effect, and the location of said arc lights are hereby fixed and determined to be at points upon all of said highways, streets, roads, and avenues, not more than 375 feet and not less than 300 feet apart."

The adoption of this general system of lighting, whereby a heavy expense was imposed upon the town (and consequently upon the city of New York) on the eve of annexation, doubling the annual charge for lighting imposed upon said town before the passage of the act of annexation, is not attacked by the defendants upon the ground of bad faith, probably because it appears that as far back as December, 1893, a general system of lighting was contemplated, as appears by the following general resolution passed by the board on the 22d of that month:

"Whereas, complaints have been made that the electric lights heretofore located by this board are at numerous places too far apart, and, therefore, inadequately light the highways, and are too few in number; and, whereas, it appears proper and expedient to this board, and to the municipal authorities of the town of Westchester, that further and additional electric lights be located on Main street, the Harlem road, the Williamsbridge road, the West

Farms road, the road to Clausen's Point, and the roads on Throg's Neck, and in Unionport and Bronxdale, and on other streets, avenues, and highways in said town, pursuant to the contract between this town and the Bronx Gas & Electric Company: Now, therefore, be it resolved, that additional arc lights of the same kind as those now in operation by said company be, and they are hereby, located at convenient points upon and along the said streets, roads, and avenues, and the town clerk is hereby directed to deliver a certified copy of this resolution to said company."

The earlier resolution, while ineffectual as a location, because utterly indefinite, indicates that the general system of lighting had been contemplated by the town authorities over a year and a half before the act of annexation was passed, and under it certain additions had been made, bringing the number of lights up from 224° on May 23 to 276 on May 31, 1895, and the company had proceeded to increase its plant under the said resolution. But what had been done by the company in erecting new lamps under the resolution of December 22, 1893, and of subsequent resolutions of January 11, February 12, and April 16, 1894, was confirmed and ratified by the last resolution of June, 1895, which had the effect of locating the lamps already erected. It is to be observed that the last-named resolution, upon which the whole case for the plaintiff depends, is certified by the town clerk as having been adopted by the board of town officers; but, whether so certified or not, a legal and effectual location of lights was established on that date, notwithstanding any indefiniteness as to points of location, or any question as to location by the town auditors instead of the town board, then or at any previous date. The case illustrates very clearly, however, the necessity of restrictive provisions in all legislation having in view the annexation of territory to existing municipalities, since it would be within the power of the local boards of such territory to impose upon the consolidated municipality extreme burdens for merely local benefit. In the present instance the board of estimate and apportionment for the city of New York has allowed for the year 1896 the sum of $50,000 for 400 lamps in what was formerly the town of Westchester, but the plaintiff corporation claims the right to recover under the authorization mentioned for the full number of lamps erected up to the year 1896, and its strict legal right seems to be undeniable. As I have said, the location by the resolution of June 4, 1895, was not indefinite. It was not necessary, and, indeed, would have been somewhat difficult, for the board to mark out the exact site of each lamp. The location of each lamp was fixed at not less than 300 feet and not more than 375 feet from the next light, and, as an imperative minor limitation was fixed, the number and location of lights were easily computable and ascertainable. The discretion of the plaintiff company to place them further apart imposed no additional burden.

It is to be observed that the answer of the defendants in this action admits "that the town board of the town of Westchester, claiming to act under and in pursuance of said contract, from time to time, and up to and including the 3d day of June, 1895, assumed to designate, determine, and locate lights upon certain streets, avenues, highways, and public places in said town, and that in pursuance of said designation and location by said town board the plaintiff herein

erected and maintained various lights upon certain of the streets, avenues, highways and public places in said town." This admission relieved the plaintiff from proving the authority of the board, or the definiteness of the location.

As to alleged restrictions upon the power of the town board to exceed the expenditure of $28,000 for the lighting for the year 1895: For the year 1895 the town appropriated the sum of $28,000 to pay for such lights, and this provided for 224 lights at the contract price. The power of the town board to increase the number of lights was not limited by such appropriation. No general nor special law restricted the local officers of the town of Westchester to expenditures within their annual appropriations, and no limitation upon the power of the mayor, aldermen, and commonalty in that regard would affect the act of such town officers prior to annexation. The contract of the plaintiff was made prior to the act of annexation, and cannot be said to have been entered into with a view to any such restrictions attaching by virtue of the town becoming incorporated with this municipality. Sections 46 and 47 of the New York City consolidation act (Laws 1882, c. 410, being a re-enactment of many previous statutes) forbid the incurring of expenses in the absence of a previous appropriation covering such expense, and exonerate the city from any liability in excess of the amount appropriated. While the act of annexation (1895) subjects, as I have said, the annexed territory to the same laws as if such territory had been included within the Twenty-Fourth ward by the act of 1873, a subsequent provision of the same statute (section 3) is careful to provide that nothing contained in the act shall impair the obligation of any contract. The case of Morson v. Town of Gravesend, 89 Hun, 52, 35 N. Y. Supp. 94, is cited as instructive on this point, but in that case the town had no authority to employ the plaintiff, and the liability of the town ceased upon the expenditure of the particular sum allowed by the special act prescribing the limit of expense to be incurred for a particular object. No such limit is to be found in the act authorizing contracts by towns for lighting, and authorizing the levy and collection of moneys for town purposes. As this claim would have been enforceable against the town of Westchester, it is not affected by restrictions in the charter of the city of New York. The power conferred by the act (chapter 79 of the Laws of 1893) is to contract for the lighting of the streets, and is not limited to any annual sum. On the contrary, section 4 requires that the amount of any contract shall be assessed, levied, and collected. The contract is to precede the assessment, and not the assessment the contract. The appropriation was by the following resolution:

"Resolved, that there shall be levied and assessed upon the taxable property of the town of Westchester outside of the corporate limits of the town of Williamsbridge, and collected, the following sums of money, to wit, * * * to pay for electric lighting, as per contract, $28,000."

If the town had contracted for an amount in excess of the sum named, it could not escape liability by assessing a smaller sum, and neglecting to make provision for the deficiency. If provision was not made for the payment of the full amount of the contract, it was

not the fault of the plaintiff.    The statute (section 4) is mandatory:
"The amount of any contract that may be entered into pursuant to
the provisions of this act shall be assessed, levied and collected."
The plaintiff was entitled to rely upon compliance with this direction
by the proper town authorities.

Further restriction upon the power of the town board to increase
the annual expenditure beyond a certain sum is claimed to result
from the provisions of the contract itself, which provides that the
town should not demand or receive lighting the expense of which
should exceed one-half of 1 per cent. on the assessed valuation of its
property, which it is conceded would amount, in 1895, to $35,000.
Had such a limitation been incorporated in the statute authorizing
the contract, it would have been effectual, but a distinction must be
drawn between a statutory limitation and one imported by the parties
themselves into a contract which they have full power to waive by
mutual agreement.    The restriction self-imposed by the town could
be waived by it, and lights in excess of the limitation ordered.    What
the town board could have done in the first instance they could do
afterwards, and in the first instance they could have dispensed with
any such limitation.

The act authorizing the making of contracts for town lighting pro-
vided that, for the payment of the expenses of the lighting contracted
for, the town board may establish one or more lamp or lighting dis-
tricts.    It is insisted that until lighting districts were established a
contract for lighting could not be enforced.    It appears that by a
resolution adopted by the board of town auditors on November 23,
1893, all the lands within the said town, not included within the
bounds of the corporate limits of the village of Williamsbridge, were
made a lamp or lighting district for the purpose of payment of the
expense of the lighting of the streets, avenues, and highways or pub-
lic places in the town, and said lighting district was established by
said resolution.    If the resolution be questioned because nominally
made by the board of town auditors, and not by the town board, al-
though this distinction, as I have shown, is immaterial, it does not ap-
pear from the language of the act that the validity of the contract
depends upon the establishment of such a lamp or lighting district.
The town board may establish one or more lighting districts, but the
amount of the contract is to be assessed, levied, and collected on the
taxable property of the said town or district; thus indicating that,
if the district is not established, the expense is to be a town charge.

Finally, it is claimed that each modification of or addition to the
original contract and each additional location of lights was a new
and separate contract, requiring for its validity the same formalities
exacted by the statute for the original contract, to wit, petition, ad-
vertisement, etc.    It is sufficient to say that, the power to contract
being originally and effectually conferred by petition and advertise-
ment in the form prescribed by the statute, it is not exhausted by the
single exercise of power by the town board, but is continued so as to
enable the town authorities, in carrying out fully the objects of the
statute, to make all such modifications and extensions as a sound dis-
cretion called for.    The inconvenience and danger of holding the

contrary are too apparent. So long as the town authorities did not exceed by any subsequent agreement with the lighting corporation, or its successors, powers conferred by the original petition of taxpayers provided by the statute, the validity of their acts cannot be questioned. What they could do at any one time they could do from time to time as occasion demanded. It was a prudent and discreet exercise of the power to contract for a little at a time, reserving the right by later contracts to take advantage of circumstances that might benefit the public.

The allegations of the complaint having been sustained by the proofs, the plaintiff is entitled to judgment for $28,552.87, with interest as demanded, less the amount admitted by the answer and subsequently paid, $16,311.44, with interest from the date of payment.

Judgment for plaintiff.